By virtue of an ordinance of a Convention of the people of the State, entitled "An Ordinance to amend the charter of the Chatham Railroad Company," ratified 11 March, 1868, the Public Treasurer of the State *Page 345 
was authorized and directed to deliver to the said company coupon bonds of the State, to an amount not to exceed $1,200,000, with coupons for interest at 6 per cent, payable semi-annually, the (500) principal payable 30 years from the date thereof.
By the said ordinance it was further provided that before the Public Treasurer should deliver any of the said bonds to the said company, the said company should execute and deliver to the Public Treasurer its coupon bonds for the same amount, of the same date, and bearing the same interest, and the principal and interest payable at same time and place, as the coupon bonds of the State directed to be issued to the said company.
That to secure said bonds, the State should have a lien on the property, real and personal, of said company, and secured by a mortgage.
It was also further ordained by the third section of said ordinance, "That the Chatham Railroad Company may at any time before maturity, take up the bonds of said company deposited with the Public Treasurer, by substituting in lieu thereof coupon bonds of the State or other indebtedness of the State."
An exchange of bonds was duly made between the State and the said railroad company, and the mortgage duly executed and registered. By an Act of the General Assembly ratified the 13th day of December, 1871, entitled "An Act concerning the Chatham Railroad Company, amendatory of certain acts, and authorizing a change of name," said company was allowed to and did in fact change its name to that of the Raleigh and Augusta Air-Line Railroad Company. And by said act the said company, by the name of the Raleigh and Augusta Air-Line Railroad Company, became entitled to all the rights, privileges and immunities at any time by law granted to the said Chatham Railroad Company. By section 5 of said act it is enacted, "That the said Raleigh and Augusta Air Line Railroad Company may at any time hereafter discharge the bonds of the Chatham Railroad Company deposited with the Public Treasurer in the same manner and not otherwise as the said Chatham Railroad Company is now authorized by law (501) to do, and the Public Treasurer is hereby directed to return to the said Raleigh and Augusta Air-Line Railroad Company the said bonds of the Chatham Railroad Company, on payment in manner above prescribed, until the whole amount of said bonds of the Chatham Railroad Company held by the State shall have been surrendered." These amendments were duly accepted by the Chatham Railroad Company, and thereby it became the Raleigh and Augusta Air-Line Railroad Company. On 1 April, 1872, and before the bonds of the plaintiff became due, the plaintiff tendered to the defendant, David A. Jenkins, Public Treasurer of the State of North Carolina, divers bonds of the State, *Page 346 
issued at different dates and under various acts, but all under acts passed after the 11th March, 1868. The Public Treasurer refused to surrender and exchange. The plaintiff brought this action. Defendant demurred to the complaint. His Honor sustained the demurrer and ordered that the action be dismissed. Plaintiff appealed.
Batchelor, Edwards Batchelor and Clark for appellant.
Hargrove, Attorney-General, contra.
PEARSON, C. J. This is an application for a mandamus to require the Public Treasurer to accept a tender of special tax bonds (as they are termed), and to deliver to the plaintiff a like amount of the Chatham Railroad bonds held by him.
The case is governed by McAden v. Jenkins, 64 N.C. 796. There are other considerations which support our conclusion set out in another case between the same parties, decided at this Term; to which reference is made,post 502.
Order for mandamus refused.
PER CURIAM. Affirmed.
Cited: Garner v. Worth, 122 N.C. 258.
(502) R. R. v. JENKINS, 68 N.C. 502 (1873) RALEIGH AUGUSTA AIR-LINE RAILROAD COMPANY v. DAVID A. JENKINS, Public Treasurer. Supreme Court of North Carolina. (January Term, 1873.)
1. Where an Act of the legislative branch of the government directs an executive officer to do a specific act, which does not involve any official discretion, but is merely ministerial, as to enter a specific credit upon an account, and the officer refuses to do so, a mandamus will be ordered.
2. The Court has power to compel the Public Treasurer to do only such an act as involves no official discretion, and is required by an expresscommand of the General Assembly.
3. Under the ordinance of the Convention, 11 March, 1868, in favor of the Chatham Railroad Company, the Public Treasurer is not bound to accept in exchange for mortgage bonds of said Company any State bonds issued after
the passage of the ordinance.
ACTION to obtain an order for a mandamus returned before Chief JusticePearson, at Chambers, in Raleigh, on 1 February, 1873.
The facts are the same as in the foregoing case between the same parties, except that in this case the bonds tendered by the plaintiff, for which were demanded the mortgage bonds of the Chatham Railroad Company, were bonds of the State, some of them issued prior to the *Page 347 
ordinance of the Convention, ratified 11 March, 1868, and some issued after the passage of said ordinance.
On the return of the summons the defendant filed a special demurrer to the complaint, and Chief Justice PEARSON made the following order: No action of the Court being required it being informed that either party will appeal, I decide the matter against the defendant, to the end that the case may come up without further security.
From this decision the defendant appealed.
We hold, but with much hesitation, that this Court has power by mandamus to require the Public Treasurer to accept bonds of the State, and to deliver to the plaintiff a like amount (503) of the bonds of the Chatham Railroad Company, which he holds by reason of an exchange of State bonds for the bonds of that Company.
It must be admitted that the power of the Courts to compel by the writ of mandamus, an executive officer of the government to do certain acts, has been carried to its utmost limit, so as not to violate the provision of the Constitution — that the executive, legislative and judicial powers of the government ought to be forever separate and distinct from each other. Const., Art. I, sec. 8.
It is settled, that when an act of the legislative branch of the government directs an executive officer to do specific act which does not involve any official discretion, but is merely ministerial — as to enter a specific credit upon an account, and the officer refuses to do so, a mandamus will be ordered. Kendall v. U.S., 12 Peters, 524.
By ordinance 11 March, 1868, it is ordained: "The Chatham Railroad Company may at any time before maturity take up the bonds of said company, deposited with the Public Treasurer, by substituting in lieu thereof coupon bonds of the State or other indebtedness of the State."
By an Act of the General Assembly, 13 December, 1871, it is enacted: "The said Raleigh and Augusta Air-Line Railroad Company, may at any time hereafter discharge the bonds of the Chatham Railroad Company, deposited with the Public Treasurer in the same manner and not otherwise, as the said Chatham Railroad Company is now authorized by law to do, and the Public Treasurer is hereby directed to return to the said Raleigh and Augusta Air-Line Railroad Company the said bonds of said Chatham Railroad Company, on payment in the manner above prescribed, until the whole amount of said bonds of the Chatham Railroad Company, held by the State, shall be surrendered." *Page 348 
Our doubt was, because of the fact that there was not one specific act to be done; that is, to hand over the Chatham Railroad bonds, as (504) to hand over "the commissions." Mabry v. Madison, 1 Cranch, 49; but the further concomitant act, to receive State bonds of like amount in lieu thereof; no case has gone further than to commend a single specific act to be done, when required of an executive officer by the legislative branch of the government; and when it is purely ministerial, and does not involve any official discretion. At first blush it seemed there were two acts to be done, accepting State bonds, and returning the railroad bonds; and inasmuch as there were many classes of State bonds of different values in the market, it might be that the Public Treasurer would be called upon to exercise an official discretion as to the sort of bonds that he ought to receive. We are satisfied that this is not a question of official discretion, but one resting upon the construction of the two statutes above cited, which is purely a question of law. So neither of the acts called for the exercise of "official discretion," and both together amount to but one ministerial act, which he is required to do by acts of the General Assembly. Before doing it the Treasurer was well warranted in calling for a construction of the two statutes by the judicial branch of the government. Let it be noted that we put our power on the ground that there is an express command of the General Assembly that the Public Treasurer shall, upon the tender of State bonds, return a like amount of the Chatham Railroad bonds. This excludes the idea that any creditor of the State can have a mandamus
against the Treasury; for there is no express command of the General Assembly that the Public Treasurer shall pay all of the debts of the State, and if a claim is presented to him, it must be left to his official discretion as to the time, condition of the Treasury, etc., when he will pay it; the Court could not interfere in such a case without encroaching upon the powers of the executive department of the government.
(505) We think it clear that the Public Treasurer ought to receive the State bonds issued in exchange for the Chatham Railroad bonds as it was one transaction. But we are of opinion that the Public Treasurer is not bound to accept any bonds after the ordinance made in favor of the Chatham Railroad Company, 11 March, 1868.
The plaintiff is seeking to take an unfair advantage of the State by buying up the most depreciated bonds of the State and tendering them for a return of the Chatham Railroad bonds, which although, by special legislation, the State did surrender its priority as first mortgage creditor, are still worth more in the market than the lowest class of State bonds which the plaintiff is "picking up." As is said, McAden v. Jenkins,64 N.C. 796, it is well settled, that acts of the General Assembly drafted *Page 349 
by "promoters," as they are styled in England, or as we call them "lobby members," are to be construed in a sense most favorable to the State. In a broad sense, the words of the ordinance 11 March, 1868, include coupon bonds or other indebtedness of the State, as well as such as may afterwards be issued as such as were then outstanding.
Taking these words most strongly against the Railroad Company, we take them to mean any coupon bonds now outstanding, or other indebtedness of the State, to wit: any of the registered bonds that were issued without coupons attached, and were outstanding on 11 March, 1868.
A man makes a deed of trust to secure all of his creditors. The construction settled by the authorities, confines the operation of the trust to creditors at the date of the deed, and excludes subsequent creditors. So we exclude all bonds issued after 11 March, 1868.
PER CURIAM. Ordered accordingly.
Cited: County Board v. State Board, 106 N.C. 83; Russell v. Ayer,120 N.C. 186, 197; Farmer v. Worth, 122 N.C. 258; Bennett v. Com'rs,125 N.C. 470; S. v. Biggs, 133 N.C. 733; Barnes v. Com'rs, 135 N.C. 38;Jones v. Com'rs, Ib., 221; Withers v. Com'rs, 163 N.C. 345.
(506)